FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 02 2026 ★
LONG ISLAND OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

NICHOLAS BRANCATO, by and through
ANTOINETTE BRANCATO, Court-Appointed
Article 17-A Guardian of the Person

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

U.S. BANK TRUST NATIONAL ASSOCIATION,
not in its individual capacity, but solely as Trustee of the Truman 2021 SC9 Title Trust;
CARRINGTON MORTGAGE SERVICES, LLC

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. CV 26 6375
*(to be filled in by the Clerk's Office)*

Jury Trial: ☒ Yes ☐ No
*(check one)*

RECEIVED
OCT 02 2026
EDNY PRO SE OFFICE

GERSHON, J.

WICKS, M.J.

RECD IN PRO SE OFFICE
OCT 2 '26 PM2:26

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Nicholas Brancato, by/through Antoinette Brancato, Guardian |
| Street Address | 166 West Windsor Parkway |
| City and County | Oceanside, Nassau County |
| State and Zip Code | New York 11572 |
| Telephone Number | (516) 425-7927 (c/o guardian) |
| E-mail Address | antoinettebrancato@gmail.com (c/o guardian) |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | U.S. Bank Trust National Association Not in its individual capacity |
| Job or Title (if known) | but solely as Trustee / of the Truman 2021 SC9 Title Trust Defendant |
| Street Address | 1011 Centre Road, Suite 203 |
| City and County | Wilmington, New Castle County |
| State and Zip Code | Delaware 19805 |
| Telephone Number | Unknown - verify before service |
| E-mail Address (if known) | Unknown - verify before service |

Defendant No. 2

| | |
|---|---|
| Name | Carrington Mortgage Services, LLC |
| Job or Title (if known) | Mortgage servicer / Defendant |
| Street Address | 1600 South Douglass Road, Suites 110 & 200-A |
| City and County | Anaheim, Orange County |

| | |
|---|---|
| State and Zip Code | California 92806 |
| Telephone Number | 1-800-561-4567 |
| E-mail Address (if known) | Unknown |

Defendant No. 3

| | |
|---|---|
| Name | N/A - no Defendant No. 3 |
| Job or Title (if known) | |
| Street Address City | |
| and County State | |
| and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 4

| | |
|---|---|
| Name | N/A - no Defendant No. 4 |
| Job or Title (if known) | |
| Street Address City | |
| and County State | |
| and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A. If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 U.S.C. § 1331; Fair Housing Act, 42 U.S.C. §§ 3604 (F)(3)(B) 3605, 3617 and 3613

24 C.F.R. §§ 100.204, 100.130 (b)(3) and 100.400

See attached Complaint [redacted], incorporated by reference.

**B. If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* ______________________, is a citizen of the State of *(name)* ______________________.

b. If the plaintiff is a corporation

The plaintiff, *(name)* ______________________, is incorporated under the laws of the State of *(name)* ______________________, and has its principal place of business in the State of *(name)* ______________________.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* ______________________, is a citizen of the State of *(name)* ______________________. *Or* is a citizen of *(foreign nation)* ______________________.

b. If the defendant is a corporation

The defendant, *(name)* ______________________, *is incorporated under* the laws of the State of *(name)* ______________________, and has its principal place of business in the State of *(name)* ______________________. *Or* is incorporated under the laws of *(foreign nation)* ______________________, and has its principal place of business in *(name)* ______________________.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

______________________________________________________________

______________________________________________________________

______________________________________________________________

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached Complaint [redacted], incorporated by reference. Plaintiff alleges disability discrimination, Failure to reasonably accommodate, Retaliation and interference in residential mortgage servicing/enforcement by U.S. Bank Trust National Association and Carrington Mortgage Services after actual notice of Nicholas's disability and housing-stability concerns, including inspection/recording conduct to the extent discovery establishes Defendants' responsibility. See attached complaint [redacted] for Counts I-II.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached Complaint—Prayer for Relief. Plaintiff seeks compensatory damages; punitive damages if proven; prospective declaratory and injunctive relief directed solely to Defendants' alleged Fair Housing Act violations; recognition of Antoinette Brancato's existing representative status under Rule 17(c)(1), with the Article 17-A guardianship fully preserved and no guardian ad litem requested; a reasonable opportunity for licensed counsel to appear and, if appropriate, appointment or request of licensed counsel; IFP fee-waiver relief; and other lawful federal relief. Plaintiff does not ask this Court to reverse, vacate, stay, or nullify any state-court foreclosure order or proceeding.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: October 2, 2026

Signature of Plaintiff [signature] Antoinette Brancato Solely as a court Appointed Article 17 Guardian of the Person of Nicholas Brancato

Printed Name of Plaintiff Nicholas Brancato by and Through Antoinette Brancato His court Appointed Article 17A Guardian of the person

CV 26 6375

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NICHOLAS BRANCATO, by and through ANTOINETTE BRANCATO, his Court-Appointed Article 17-A Guardian of the Person,**<br><br>Plaintiff,<br><br>-against-<br><br>**U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee of the Truman 2021 SC9 Title Trust, and CARRINGTON MORTGAGE SERVICES, LLC,**<br><br>Defendants. | **Civil Action No. __________**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR HOUSING ACT; REQUEST FOR LICENSED COUNSEL; JURY DEMAND**<br><br>FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br>★ OCT 02 2026 ★<br>LONG ISLAND OFFICE<br>RECEIVED |

# COMPLAINT

OCT 02 2026

EDNY PRO SE OFFICE

Plaintiff Nicholas Brancato ("Nicholas"), by and through Antoinette Brancato solely in her existing capacity as his court-appointed Article 17-A Guardian of the Person, alleges as follows. Antoinette Brancato is not an attorney and does not purport to conduct federal litigation as Nicholas's licensed legal counsel. This Complaint seeks relief under the Fair Housing Act and requests a reasonable opportunity for licensed counsel to appear for Nicholas before substantive merits litigation requiring legal representation proceeds.

## PRELIMINARY STATEMENT

GERSHON, J.

WICKS, M.J.

**1.** This is an independent federal Fair Housing Act action concerning disability discrimination, discriminatory servicing and enforcement of a residential mortgage transaction, failure to reasonably accommodate, interference with federally protected housing rights, and related conduct *affecting Nicholas Brancato and the family residence. The claims concern Defendants' own alleged* conduct after actual and repeated notice of Nicholas's profound disability, incapacity, guardianship, inability independently to protect his legal interests, and disability-related need for a stable and predictable home environment.

**2.** Nicholas is 23 years old. He is profoundly disabled, autistic, nonverbal, vulnerable, and substantially limited in communication, understanding, decision-making, and independent management of his affairs. He has lived in the family residence in Nassau County for approximately 23 years. It is the only residence he has known. His daily supervision, caregivers, medical care, OPWDD-related services, habilitation, structured routines, community participation, and support system are integrated with that longstanding home environment.

**3.** The conduct challenged here includes, among other things: treatment of Nicholas as a named person against whom default-based and property-affecting relief was pursued despite the absence of any identified personal loan obligation attributable to him; continued pursuit of such relief after extensive disability and guardianship notice; a representation that the affected defendants were of

"sound mind" and "not incompetents" despite the Nicholas-specific record; damage to the occupied residence during attempted service of process; recurring inspections, drive-bys, photographing, filming, and video recording directed toward the occupied residence, including toward windows, doors, occupants, and areas visible through an open doorway; and continuation of that activity after repeated disability-specific objections and requests that it cease or be modified.

**4.** The challenged inspection and recording activity is alleged not merely because exterior inspections occurred, but because of its frequency, continuation, manner, scope, apparent direction toward occupied windows and doorway areas, recording of occupants or areas visible from those locations, continuation after written objections, and effect upon the privacy, security, quiet and peaceful use and enjoyment of the home. Nicholas's treating physicians have documented that stability, familiarity, consistency, routine, and minimal environmental disruption are medically significant to his functioning and that change may cause serious deterioration.

**5.** The state foreclosure action and related appeals are separate proceedings. Nicholas does not ask this Court to sit as an appellate court over the Nassau County foreclosure action, determine foreclosure standing, calculate the mortgage debt, adjudicate title, review the correctness of a state-court ruling, invalidate a state-court order, or vacate a foreclosure judgment. State-court materials are pleaded only where relevant to notice, knowledge, representations, chronology, conduct, causation, injury, agency, discovery, or the independent federal claims asserted here.

## PARTIES AND REPRESENTATIVE CAPACITY

**6.** Nicholas Brancato is a 23-year-old adult resident of Nassau County, New York. He is profoundly disabled, autistic, and nonverbal, has substantial developmental and communication limitations, cannot independently manage litigation or protect his own legal interests, and receives disability-related services and supports associated with his established home and community environment. His Article 17-A guardianship order and supporting disability and medical documentation are submitted together as Exhibit A.

**7.** Antoinette Brancato is Nicholas's duly appointed Article 17-A Guardian of the Person. She submits this Complaint solely in that existing court-appointed representative capacity. She does not purport to act as Nicholas's licensed legal counsel. Nicholas does not request appointment of a guardian ad litem, next friend, substitute guardian, additional guardian, or other fiduciary. Nothing in this pleading asks the Court to review, modify, limit, replace, supersede, surrender, terminate, or otherwise disturb Antoinette Brancato's existing Article 17-A guardianship or any authority, duty, protection, or right conferred by the guardianship order or applicable law.

**8.** U.S. Bank Trust National Association ("U.S. Bank") is the entity that commenced and prosecuted the Nassau County foreclosure action, Index No. 621346/2024, after a prior foreclosure action, Index No. 606180/2023, was voluntarily discontinued. U.S. Bank identifies itself in the state proceedings as Trustee of the Truman 2021 SC9 Title Trust. That description is recited as U.S. Bank's asserted capacity and does not constitute an admission concerning ownership, standing, possession, transfer, authority, enforceability, agency, lien scope, or any limitation of liability arising from the conduct alleged in this federal action.

**9.** Carrington Mortgage Services, LLC ("Carrington") is identified in servicing records and state-court papers as the mortgage servicer after a servicing transfer effective on or about February 3, 2025. That description likewise reflects a role asserted in Defendants' own records and does not independently admit the validity, scope, exclusivity, or legal effect of any asserted servicing, agency, transfer, possession, ownership, or representative capacity.

## JURISDICTION AND VENUE

**10.** This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the claims arise under the Fair Housing Act, including 42 U.S.C. §§ 3604(f)(3)(B), 3605, and 3617, with private civil enforcement authorized by 42 U.S.C. § 3613 and the HUD regulations already invoked in this Complaint.

**11.** Nicholas is an "aggrieved person" within 42 U.S.C. § 3602(i) because he alleges present and threatened concrete injury from the discriminatory housing practices described below. The Fair Housing Act recognizes an injury that need not be solely economic or tangible. See Rodriguez v. Village Green Realty, Inc., 788 F.3d 31 (2d Cir. 2015).

**12.** Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions alleged occurred in Nassau County, New York, and the dwelling affected by the challenged conduct is located within this District.

**13.** Under 42 U.S.C. § 3613(b)(1), the Court may appoint an attorney for a person alleging a discriminatory housing practice. Under 28 U.S.C. § 1915(e)(1), where applicable, the Court may request an attorney to represent a person unable to afford counsel. Nicholas requests a reasonable opportunity for licensed counsel to appear and, if appropriate, appointment or request of licensed counsel as authorized by the authorities already pleaded.

## GOVERNING FEDERAL STATUTES, REGULATIONS, AND RULES ALREADY PLEADED

**14.** The following federal provisions are the legal authorities already relied upon in this Complaint. This organizational section does not add a new cause of action or legal theory.

### A. Disability, Aggrieved-Person Status, and Present or Threatened Injury

**15.** 42 U.S.C. § 3602(h) supplies the Fair Housing Act definition of handicap relied upon here. 42 U.S.C. § 3602(i) recognizes an "aggrieved person" as a person who claims injury from a discriminatory housing practice or believes such injury is about to occur. 42 U.S.C. § 3613(a) authorizes a private civil action, and § 3613(c) authorizes actual and punitive damages and appropriate injunctive or other equitable relief.

### B. Reasonable Accommodation and Equal Use and Enjoyment of a Dwelling

**16.42 U.S.C. § 3604(f)(3)(B) defines discrimination because of handicap to include refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling. The Complaint also relies upon 24 C.F.R. § 100.204. The governing**

**Second Circuit authorities include Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014), and Austin v. Town of Farmington, 826 F.3d 622, 627–30 (2d Cir. 2016)**

C. Residential Real-Estate-Related Transactions and Mortgage Servicing

**17.** 42 U.S.C. § 3605 prohibits discrimination because of handicap in residential real-estate-related transactions. 24 C.F.R. § 100.130(b)(3) identifies servicing loans concerning dwellings or secured by residential real estate in a discriminatory manner as unlawful. Boykin v. *KeyCorp, 521 F.3d 202, 214–16 (2d Cir. 2008), addresses Fair Housing Act discrimination in* residential mortgage lending, and Marquard v. New Penn Financial, LLC, No. 3:17-CV-549-SI, 2017 WL 4227685 (D. Or. Sept. 22, 2017), applies § 3605 and 24 C.F.R. § 100.130(b)(3) to mortgage servicing.

**D. Interference and Retaliation**

**18. 42 U.S.C. § 3617 and 24 C.F.R. § 100.400 prohibit coercion, intimidation, threats, interference, and retaliation in connection with protected Fair Housing Act rights. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54–55 (2d Cir. 2002), addresses interference and retaliation under § 3617, and Gilead Community Services, Inc. v. Town of Cromwell, 112 F.4th 93 (2d Cir. 2024), confirms the motivating-factor causation standard applicable to Fair Housing Act retaliation claims**

**E. Causation and Attribution**

**19.**.The causation allegations are directed to Defendants' own conduct. Connecticut Fair Housing Center v. CoreLogic Rental Property Solutions, LLC, 167 F.4th 605 (2d Cir. 2026), addresses the requirement of a legally sufficient causal connection between a defendant's own conduct and the alleged housing injury. Nicholas also seeks discovery concerning legally sufficient attribution of third-party conduct under traditional agency principles, including the principles discussed in Meyer v. Holley, 537 U.S. 280, 285–91 (2003)

**F. Existing Guardian, Licensed Counsel, Alternative Pleading, Amendment, and Future Injunctive Relief**

***20.*****Federal Rule of Civil Procedure 17(c)(1) is invoked solely to recognize Antoinette Brancato's existing court-appointed representative status. Nicholas does not request appointment of a guardian ad litem under Rule 17(c)(2). The Complaint also preserves the cumulative and alternative pleading authorized by Rule 8(d), the ability to seek leave to amend or assert an additional claim supported by a good-faith factual and legal basis consistent with Rule 11, and the ability to make a separate future application under Rule 65 if immediate or irreparable circumstances later warrant such relief. Berrios v. New York City Housing Authority, 564 F.3d 130, 133–35 (2d Cir. 2009), addresses the need for a reasonable**

**opportunity to obtain licensed counsel where a non-attorney guardian cannot act as licensed counsel for the represented person**

PURPOSE OF STATE-COURT MATERIALS AND EXPRESS NON-CONCESSION

**21. The Fair Housing Act separately defines discrimination because of handicap to include refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014), and Austin v. Town of Farmington, 826 F.3d 622, 627–30 (2d Cir. 2016), address the governing reasonable-accommodation standards, including necessity, reasonableness, refusal, and the relationship between the requested accommodation and disability-related use and enjoyment. A separate showing of discriminatory animus is not *required for a failure-to-accommodate claim.***

**22. HUD's implementing regulation expressly reaches mortgage servicing. 24 C.F.R. § 100.130(b)(3) identifies as unlawful the discriminatory servicing of loans concerning dwellings or secured by residential real estate. Boykin v. KeyCorp, 521 F.3d 202, 214–16 (2d Cir. 2008), addresses Fair Housing Act discrimination in residential mortgage lending, and Marquard v. New Penn Financial, LLC, No. 3:17-CV-549-SI, 2017 WL 4227685 (D. Or. Sept. 22, 2017), applies § 3605 and 24 C.F.R. § 100.130(b)(3) to mortgage servicing.**

**23. Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, a right protected by the Act. HUD's implementing regulation, 24 C.F.R. § 100.400, likewise prohibits coercion, intimidation, threats, interference, and retaliation. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54–55 (2d Cir. 2002), addresses interference and retaliation under § 3617, and Gilead Community Services, Inc. v. Town of Cromwell, 112 F.4th 93 (2d Cir. 2024), confirms the motivating-factor causation standard applicable to Fair Housing Act retaliation claims.**

**24.**.Because Antoinette is not an attorney, she does not purport to act as Nicholas's licensed legal counsel. Berrios v. New York City Housing Authority, 564 F.3d 130, 133–35 (2d Cir. 2009), addresses the need to provide a reasonable opportunity to obtain licensed representation and, where appropriate, for the Court to consider appointment of counsel before an incompetent person's potentially substantial claims are adjudicated on the merits.

## FACTUAL ALLEGATIONS

### A. Residential Transaction, Lack of Loan Obligation, and Requested Underlying Records

**25.** U.S. Bank commenced the present Nassau County foreclosure action, Index No. 621346/2024, on or about December 2, 2024, following voluntary discontinuance of the prior action, Index No. 606180/2023. The present state-court pleading seeks foreclosure and additional property-affecting relief concerning the family residence.

***26.*** *According to the face of the loan materials produced, filed, or relied upon by U.S. Bank,* John Brancato is identified as the borrower on the Consolidated Note. The CEMA materials state that Antoinette Brancato is not personally liable for repayment and describe her stated role in connection with the security instrument. Those descriptions are recited from the materials and do not concede their legal effect.

**27.** Nicholas did not execute the Note, CEMA, mortgage, guaranty, or any other identified loan instrument, did not assume the mortgage debt, and is not identified in the available materials as a borrower, personal obligor, signatory, or record owner.

**28.** Underlying Notes, note-chain materials, transfer and possession materials, servicing records, *property records, account records, and other records bearing upon the purported obligation and the* basis for relief were requested in the underlying proceedings. Nicholas alleges that material records remained unproduced or untested before increasingly consequential property-affecting relief proceeded.

**29.** Adjudication of Nicholas's independent federal claims does not require this Court to determine, as an ultimate issue or prerequisite to liability, the validity of any alleged mortgage debt, foreclosure standing, note possession, transfer, enforceability, title, lien, default, statutory notice, or state-court foreclosure ruling. Evidence concerning those subjects remains relevant to the extent it bears on Defendants' conduct, knowledge, representations, treatment of Nicholas, servicing or enforcement practices, agency, authorization or control, causation, damages, defenses, the basis for naming or maintaining Nicholas as a defendant, or any interest Defendants purported to attribute to him.

### B. Nicholas Is 23 Years Old and the Family Residence Is the Only Home He Has Known

**30.** Nicholas is 23 years old and has lived in the family residence for approximately 23 years. It is the only residence he has known. *His* caregivers, *daily* routines, *OPWDD*-related services, habilitation, medical care, community participation, familiar people, and support structure have developed around that longstanding home environment. The residence is not merely the address where Nicholas happens to live; it is the stable and familiar environment around which his disability-related care, functioning, supervision, and daily life are organized.

**31.** Nicholas is profoundly disabled, autistic, nonverbal, and vulnerable. He cannot independently understand litigation, formulate legal positions, investigate facts, review records, conduct discovery, respond to motions, examine witnesses, or protect whatever legal or property interest another party may contend is attributable to him. His existing Article 17-A guardianship and supporting medical and disability documentation are included in Exhibit A.

**C. Medical Necessity of Stability, Familiarity, and Minimal Disruption**

**32.** Nicholas's treating professionals have expressly documented why disruption of his environment presents a particular risk. In an April 16, 2024 letter, Rose Marrie Sy-Kho, M.D., of Cohen Children's Medical Center/Northwell Health, stated: "Due to Nicholas' Autism, he does well with consistency, structure and less change is better." Dr. Sy-Kho explained that changes in routine may produce disruptive behaviors, including physical aggression or emotional meltdowns, emphasized the importance of familiar routines, situations, places, and people, and requested "the least amount of disruption to Nicholas" or that he be permitted to remain "in the same home, community and school district." (Ex. A.)

**33.** The medical evidence became still more explicit in November 2025. Lewis A. Levy, M.D., a board-certified neurologist treating Nicholas for autism, entitled his November 4, 2025 letter "*Nicholas needs stability in his life.*" Dr. Levy stated: "*Because of the autism, Nicholas requires* consistency, structure, and less change in his environment." He further explained that Nicholas "would have significant difficulty adjusting" to changes in routine or environment, might exhibit disruptive behavior including physical aggression or an emotional catastrophe, and needs familiar routines, reliable situations, and familiar places and people. Dr. Levy concluded: "Any change *might cause significant deterioration in Nicholas' condition.*" (Ex. A.)

**34.** The medical evidence therefore establishes more than a generalized preference to remain in a familiar house. Nicholas's treating physicians identified a direct connection between environmental stability and his neurological and behavioral functioning. They identified foreseeable risks of disruption including difficulty adjusting, disruptive behavior, physical aggression, emotional meltdown or catastrophe, and significant deterioration, and emphasized familiarity, structure, consistency, and minimal change.

**35.** Nicholas therefore pleads that continuity of his established home environment is medically significant to his safety, functioning, stability, and ability to receive the benefit of the *disability-related supports organized around the home. Conduct that repeatedly disrupts the privacy,* security, predictability, and quiet enjoyment of that environment, as well as threatened displacement from it, is alleged to have a disability-specific detrimental effect on Nicholas.

**D. Repeated and Cumulative Notice of Nicholas's Disability, Guardianship, and Housing Dependence**

**36.** Nicholas's disability, incapacity, guardianship, inability independently to protect himself, medical vulnerability, OPWDD-related services, and disability-related dependence upon stability were repeatedly disclosed in the state action and communications with U.S. Bank and its counsel. The chronology is representative rather than exhaustive and includes the following:

**(a)** May 13, 2025 - the Verified Answer and defenses/counterclaims, NYSCEF Doc. No. 34, raised Nicholas's disability, incapacity, residence, and inability independently to protect himself from the beginning of the formal defense.

**(b)** June 9, 2025 - NYSCEF Doc. No. 52 separately addressed Nicholas's autism, medical circumstances, guardianship, OPWDD-related circumstances, residence, and inability to protect *his own interests.*

**(c)** Motion Sequence No. 1 - Nicholas's disability and incapacity continued to be raised in motion papers, affidavits, and supporting submissions before disposition of Plaintiff's *summary-judgment application.*

**(d)** July 30, 2025 - Cross-Motion Sequence No. 3, including NYSCEF Doc. No. 92 and supporting materials, presented Nicholas's autism, neurological condition, inability to protect himself, risk from displacement, and supporting neurologist, guardianship, and developmental-disability documentation.

**(e)** Motion Sequence No. 4, including NYSCEF Docs. 108 and 115, was a Nicholas-specific application seeking special consideration and protection based upon his autism, medical hardship, vulnerability, stability needs, and the effects of disruption or displacement.

**(f)** November 7, 2025 - NYSCEF Doc. No. 207 supplied updated medical, OPWDD/HCBS, care-management, Life Plan, and guardianship information. Nicholas's sister and caregiver also supplied first-hand information concerning his functioning, communication and adaptive limitations, dependence on familiar caregivers and routines, and the practical consequences of disruption.

**(g)** Motion Sequence No. 6 was another Nicholas-specific application seeking emergency and *disability-related* protection *based* upon updated *medical* evidence, guardianship, *OPWDD* services, continuity needs, and risk of irreparable harm.

**(h)** December 9, 2025 - Nicholas's disability, OPWDD circumstances, medical risk, and need for protection or assistance were again raised on the record at a hearing at which U.S. Bank's counsel appeared; the hearing transcript is reflected in NYSCEF Doc. No. 225.

**(i)** January 6, 2026 - U.S. Bank's opposition, NYSCEF Doc. No. 238, expressly addressed the "medical condition of her son" and characterized the disability issue as a "shield" from foreclosure, further demonstrating actual awareness of Nicholas's circumstances.

**(j)** May 26 and June 1, 2026 - Cross-Motion Sequence No. 9 and further-support papers, including NYSCEF Doc. No. 282, again presented Nicholas's disability, incapacity, guardianship, medical evidence, inability to protect himself, and requests for protection against default-based, possession-related, occupancy-displacing, title-affecting, and other irreversible consequences.

**37.** These disclosures were made while the proceedings were ongoing and before later final-relief requests. They were cumulative, detailed, and repeated. Defendants were not merely *informed that Nicholas had a disability; they received guardianship, medical, neurological*, disability-service, OPWDD/HCBS, Life Plan, care-management, caregiver, and related information explaining the severity of his incapacity and the relationship between his disability and his longstanding residential environment.

**E. Repeated Requests for Accommodation and Disability-Related Protection**

**38.** Nicholas's guardian repeatedly requested disability-related consideration and protection concerning conduct affecting his dwelling and the continuity of his support environment. A Nicholas-specific application requested "special consideration to remain in our home," supplied medical support requesting that Nicholas remain, if possible, in the same home and community, and

explained the connection between displacement or disruption and the caregivers, routines, services, habilitation, familiarity, stability, and support structure upon which Nicholas depends.

**39.** The accommodation and protection requests continued through subsequent motions, affirmations, and written communications. An October 27, 2025 written communication to U.S. Bank's counsel expressly referenced prior requests and motions for special consideration and accommodation under federal and state disability laws, invoked Nicholas's Fair Housing Act protections, and requested that conduct interfering with those federally protected rights cease or be modified.

**40.** A June 26, 2026 written communication again referred to the prior notice and requested cessation or modification of inspection, photographing, filming, and recording activity at the occupied residence. The communication advised that Nicholas was present and appeared to be *within the area being photographed or recorded, stated that the family felt targeted, unsafe, and* threatened by the continuing conduct, and requested preservation and identification of photographs, videos, reports, metadata, persons or companies involved, instructions, and the purpose of the activity.

**41.** The requests were concrete rather than abstract. They sought meaningful individualized consideration of Nicholas's profound incapacity; the medical necessity for stability, familiarity, routine, and minimal disruption; the safety concerns created by unannounced visits; the recurring inspection and recording practices at the occupied home; and the threat of displacement from the only residence Nicholas has known.

***F. May 7, 2026 "Sound Mind" / "Not Incompetents" Representation***

**42.** On May 7, 2026, U.S. Bank's counsel filed an affirmation in support of Motion Sequence No. 8 seeking a Judgment of Foreclosure and Sale. Counsel identified herself as an attorney for U.S. Bank and affirmed that she was "fully familiar with all of the proceedings herein." Nicholas remained expressly named in the caption as "NICHOLAS BRANCATO S/H/A JOHN DOE." The submission nevertheless represented: "All the Defendant(s) are of suitable age and are of sound mind, and are not incompetents or absentees, nor are they in the military."

**43.** That representation followed extensive and repeated Nicholas-specific disclosures concerning his profound autism, nonverbal status, inability independently to protect his interests, *Article 17-A guardianship,* OPWDD *services, medical circumstances, housing dependence, and* need for stability. The representation was made while U.S. Bank sought a Judgment of Foreclosure and Sale, Article 15-related, re-indexing, and other property- and title-affecting relief while the caption continued to name Nicholas.

**44.** These allegations are not pleaded to ask this Court to review or overturn a state-court ruling. They are pleaded as factual evidence relevant to Defendants' knowledge, representations, treatment of Nicholas after notice, response to disability-specific requests, and the independent federal claims asserted here.

**G. December 14, 2024 Attempted Service, Lack of Contact, and Damage to the Occupied Residence**

**45.** On December 14, 2024, a process server acting in connection with U.S. Bank's foreclosure action appeared at the occupied family residence. The subsequently filed affidavits of service state that service occurred at approximately 2:56 p.m. and 2:58 p.m. Antoinette has consistently disputed those accounts.

**46.** Neither Antoinette nor the other occupants opened the door to the process server, and no papers were personally received by anyone inside the residence. Gia Brancato, who was present, later supplied a sworn account confirming that no one opened the door and no one received papers. Antoinette likewise stated under oath that the process server did not speak with her and did not personally hand documents to her.

**47.** Antoinette described the process server's conduct at the door as aggressive. According to her sworn submission, the process server opened the exterior storm door and repeatedly struck or banged on the interior door with sufficient force that the glass cracked. Antoinette did not open the door because she did not believe it was safe to do so under those circumstances.

**48.** The physical damage was documented almost immediately afterward. The service affidavits identify the purported service times as approximately 2:56-2:58 p.m., while a timestamped photograph documenting the damaged door and broken glass was taken at approximately 3:23 p.m., approximately twenty-five to twenty-seven minutes later. Photographs and repair-related documentation were preserved.

**49.** The incident occurred at Nicholas's only and longstanding home and directly implicated the security and predictability of the environment upon which he depends. Nicholas is profoundly disabled and nonverbal, and the family had repeatedly explained that disruption to the security and predictability of the home creates particular risk for him. The incident is therefore pleaded not merely as an ordinary delivery of legal papers, but as alleged aggressive conduct at the entrance to an occupied disability-dependent dwelling that resulted in physical damage to the door protecting the home.

**50.** Antoinette promptly and repeatedly disputed the claimed personal service. Service and personal-jurisdiction objections were preserved in the Verified Answer and raised again in motion *practice, including a request for a traverse hearing. No traverse hearing was conducted. These facts* are pleaded as relevant circumstances bearing upon notice, conduct, injury, and Nicholas's inability independently to protect his interests; nothing herein waives or concedes any preserved service or jurisdictional objection.

**H. Recurring Property Inspections, Window and Door Recording, and Interference with Privacy and Quiet Enjoyment**

**51.** The recurring property-inspection and recording conduct is a separate and important part of the alleged federal course of conduct. Nicholas does not challenge the mere existence of every legitimate exterior inspection. He challenges the alleged frequency, manner, continuation, scope, direction toward occupied windows and doorway areas, recording of occupants and areas visible

into the home, continuation after written disability-specific objections, and resulting intrusion upon privacy, security, and the quiet and peaceful use and enjoyment of his disability-dependent dwelling.

**52.** In May 2025, Antoinette encountered an individual photographing the occupied family residence. When she asked who he was and why he was there, he initially stated that he was connected with the family's insurance company and said, "I work with your insurance company." After police became involved, a different explanation was provided connecting his presence to the mortgage company. The individual supplied a real-estate/business card that did not correspond with the insurance-company explanation. The vehicle involved bore New York license plate JCY-9736. Video and photographic evidence were preserved for discovery.

**53.** On October 27, 2025, Nicholas's guardian placed U.S. Bank's counsel on written notice after individuals appearing to act for or in connection with U.S. Bank stopped at the occupied residence and photographed the property while the front door was open, permitting a view toward or into the home. The communication raised privacy, safety, disability-protection, and Fair Housing Act concerns, identified Nicholas's presence in the home, and requested that U.S. Bank and persons acting on its behalf immediately refrain from conduct that could violate or interfere with the family's privacy or Nicholas's federally protected rights.

**54.** On June 26, 2026, Nicholas's guardian again provided written notice after another individual appearing to act for or in connection with U.S. Bank, its servicer, contractor, or field-service chain photographed and/or recorded the occupied residence. The communication stated that Nicholas was present and appeared to be within the area being photographed or recorded; that the family felt targeted, unsafe, and threatened; and that the challenged inspection, photographing, filming, and recording activity should cease or be modified.

**55.** The objections also followed earlier notice. In June 2023, counsel had been advised that an autistic child and minor children resided in the occupied home and was asked that persons not appear at the property unannounced. Nicholas's guardian explained that Nicholas is an elopement risk, could open the door, and does not understand the nature or purpose of strangers appearing at the residence, creating a particular safety concern associated with unannounced visits.

**56.** Despite repeated notices and requests to cease or modify the challenged conduct, photographing, recording, drive-by, stopping, lingering, and related activity continued. On or about August 26, 2026, another individual appeared outside the occupied residence and photographed and/or recorded the home, with the camera appearing to be directed toward occupied windows. Nicholas was present. Antoinette immediately notified U.S. Bank's counsel that the incident was not isolated and that similar drive-bys, stopping, lingering, photography, and video recording appeared to be occurring approximately weekly.

**57.** In the August 26 written notice, Antoinette stated: "The property is occupied. The plaintiff knows it is occupied. Carrington knows it is occupied. Counsel knows it is occupied." She explained that individuals continued recording persons standing near the doorway or windows and that Nicholas himself had been visible during some of the recording. She asked counsel to stop the repeated recording and photographs, emphasized that the home is occupied, explained that

Nicholas's stability depends upon a familiar, predictable, and secure environment, and asked that the family's privacy be respected.

**58.** U.S. Bank's counsel thereafter represented in writing that "Carrington conducts monthly exterior inspections." That response did not identify which of the recurring visits were Carrington inspections, who performed the additional or recurring visits, who ordered or authorized them, whether directing cameras toward occupied windows or recording occupants was authorized, who received or retained the photographs or video, or how those materials were used.

**59.** Nicholas does not concede who employed, retained, instructed, authorized, or controlled any unidentified individual who appeared at the residence. Discovery is necessary concerning the identities of persons and entities involved; any servicers, contractors, vendors, investigators, or field-service companies; work orders and instructions; authorization, supervision, direction, control, and payment; the purpose and scope of visits; photographs, videos, reports, metadata, and electronically stored information created; persons or entities receiving the materials; and their transmission, retention, use, and disposition.

**60.** The recurring conduct is alleged to have intruded upon the privacy and security of Nicholas's home environment and interfered with his quiet and peaceful use and enjoyment of the *dwelling. The alleged direction of cameras toward occupied windows and doorway areas,* photographing or video recording of persons at those locations, and recording toward or into areas visible through an open door are particularly significant because the home is occupied and because Nicholas cannot understand why strangers repeatedly stop outside and record the home or him.

**61.** The disability-related detriment is not alleged in the abstract. The inspection and recording conduct occurred at the only residence Nicholas has ever known, where he follows his routines and receives the benefit of the familiar, predictable environment his physicians identified as medically important. Nicholas alleges that repeated disruption, uncertainty, privacy intrusion, and strangers appearing and recording at the home undermine the sense of security, predictability, familiarity, and quiet enjoyment that his doctors have identified as especially important to his condition.

**I. Unresolved Basis for Treating Nicholas as a Person Against Whom Property-Affecting Relief Was Sought**

**62.** U.S. Bank filed pleadings and later applications seeking title- and property-affecting relief while continuing to maintain Nicholas as a named defendant.

**63.** *The available* loan and property *materials* do not *identify Nicholas* as a borrower, mortgagor, guarantor, personal obligor, signatory, or record owner. If Defendants contend that Nicholas possessed an interest requiring adjudication or extinguishment, their own records should identify that interest and the legal basis for relief against him. If Defendants contend that Nicholas possessed no cognizable interest, the basis for pursuing default-based or property-affecting relief against this known incapacitated non-obligor remains unexplained.

**64.** Nicholas pleads that the contradiction is significant because he cannot investigate, understand, communicate concerning, or independently protect whatever interest Defendants

purported to place at issue. He seeks discovery into the factual and documentary basis for naming and maintaining him as a person against whom such relief was pursued.

**J. Efforts to Obtain Licensed Legal Assistance for Nicholas**

**65.** Beginning in April 2026, Nicholas's guardian contacted the New York Legal Assistance Group ("NYLAG") and explained that Nicholas is a disabled adult, had been named as a defendant, was unrepresented, and required assistance to protect his legal and procedural interests. She also supplied information concerning his disability, need for stability and support, and her appointment through Surrogate's Court as his Article 17-A Guardian of the Person.

**66.** After reviewing the matter, NYLAG advised that it was unlikely to formally represent Antoinette or Nicholas, although limited pro se assistance was discussed. When Nicholas's guardian learned that a motion seeking judgment and sale had been filed, she again asked whether NYLAG could assist Nicholas and expressly advised that she was his court-appointed guardian. NYLAG ultimately advised that it could not assist Nicholas if he was unable to speak with its staff. The correspondence documenting these efforts is submitted as Exhibit B.

**K. Procedural Circumstances Bearing on Injury and Nicholas's Inability Independently to *Protect Himself***

**67.** The factual and documentary basis for property-affecting relief directed toward Nicholas was not meaningfully tested through completed discovery before increasingly consequential relief proceeded. Requests had been made for underlying loan documents, servicing records, property records, note-chain and possession materials, account information, and other records bearing upon the transaction and relief being pursued.

**68.** For Nicholas, the absence of completed discovery is not an ordinary litigation disadvantage. Because of his profound disability, he cannot formulate discovery demands, identify missing evidence, request documents, examine servicing records, investigate Defendants' factual assertions, *challenge affidavits, obtain testimony, or determine what evidence is necessary to protect himself.* His court-appointed guardian is not a licensed attorney and cannot substitute for licensed counsel in conducting federal merits litigation on his behalf.

**69.** The disputed service, absence of completed discovery, absence of a traverse hearing, Nicholas-specific disability notice, the May 7, 2026 representation, and the later pursuit of *increasingly consequential relief are pleaded as factual circumstances bearing upon Defendants'* notice, knowledge, course of conduct, causation, injury, and Nicholas's need for licensed representation. Nothing in these allegations asks this Court to determine whether a state-court procedural ruling was legally correct.

**L. Concrete, Procedural, Housing, Privacy, and Medical Injury to Nicholas**

**70.** Nicholas alleges concrete and threatened injury personal to him and independent of any request for appellate review of the state foreclosure. The injuries are cumulative and include the following:

**(a)** being maintained as a person against whom default-based and property-affecting relief was pursued without a clearly identified personal loan obligation or property interest attributable to *him;*

**(b)** being incapable, because of profound disability, of understanding or independently protecting whatever interest Defendants purported to place at issue;

**(c)** proceeding toward increasingly consequential property- and possession-related relief without completed discovery into material records needed to understand and test the factual basis for Defendants' treatment of him;

**(d)** the pursuit of final relief through a submission representing that affected defendants were of "sound mind" and "not incompetents" despite Defendants' possession of repeated medical, neurological, disability, and guardianship documentation concerning Nicholas;

***(e)*** *continued exposure to practices affecting the security, stability, privacy, quiet enjoyment, use,* and enjoyment of his dwelling after disability-specific notice and requests for accommodation;

**(f)** recurring inspection, photographing, filming, and recording activity at his occupied home after written objections and requests for modification or cessation, including cameras appearing to be directed toward occupied windows, doorway areas, occupants, and areas visible toward or into the home;

**(g)** physical damage to the entrance of the occupied residence during the December 14, 2024 attempted-service incident, and resulting disruption of the security and predictability of the home; and

***(h)*** *the concrete threat of displacement from the only residence Nicholas has known*, a longstanding disability-support environment his treating physicians have expressly identified as medically important and whose disruption they warned may cause physical aggression, emotional meltdown or catastrophe, and significant deterioration in Nicholas's condition.

**71.** These injuries are not pleaded as consequences merely of an adverse state-court ruling. Nicholas alleges that they arise from Defendants' own conduct toward him after actual and repeated notice of his disability, incapacity, inability to protect himself, housing dependence, medical need for stability, and disability-specific requests for accommodation and protection.

**72.** Nicholas accordingly alleges injury to the security, stability, privacy, quiet and peaceful use *and enjoyment of his disability-dependent dwelling; his ability to receive nondiscriminatory* treatment in the residential real-estate-related transaction; his ability to have disability-related accommodation requests meaningfully considered; and his ability, as a profoundly incapacitated person, to avoid being subjected to unexplained property-affecting consequences that he cannot understand or independently protect himself against.

STATUTORY AND LEGAL BASIS FOR NICHOLAS'S INJURY

73.The Fair Housing Act expressly recognizes both present and threatened injury. An "aggrieved person" includes any person who claims to have been injured by a discriminatory housing practice

or believes that such an injury is about to occur. 42 U.S.C. § 3602(i). An aggrieved person may bring a civil action under 42 U.S.C. § 3613(a), and the Court may award actual and punitive *damages and appropriate injunctive or other equitable relief under § 3613(c).*

74.Second Circuit authority recognizes that Fair Housing Act injury need not be purely economic or tangible. Rodriguez v. Village Green Realty, Inc., 788 F.3d 31 (2d Cir. 2015), recognizes that FHA standing requires a distinct and palpable injury fairly traceable to the challenged housing conduct and that such injury need not be solely economic or tangible.

75.The reasonable-accommodation provisions of the FHA directly protect the use and enjoyment of a dwelling. Section 3604(f)(3)(B) defines discrimination to include refusal to make reasonable *accommodations in rules, policies, practices, or services when such accommodation may be* necessary to afford a disabled person an equal opportunity to use and enjoy a dwelling. Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014), and Austin v. Town of Farmington, 826 F.3d 622, 627 (2d Cir. 2016), address necessity, reasonableness, refusal, and the absence of any requirement that discriminatory animus be independently proved for a failure-to-accommodate *claim.*

76.The federal protection also extends to residential real-estate-related transactions. Section 3605 prohibits discrimination because of handicap in making available, or in the terms or conditions of, such transactions. Boykin v. KeyCorp, 521 F.3d 202 (2d Cir. 2008), and 24 C.F.R. § 100.130(b)(3) address discriminatory treatment in residential real-estate financing and servicing.

77.The causation allegations are directed to Defendants' own conduct after notice. Connecticut Fair Housing Center v. CoreLogic Rental Property Solutions, LLC, 167 F.4th 605 (2d Cir. 2026), addresses whether a defendant's own conduct proximately caused the alleged housing harm. Nicholas alleges that Defendants' own post-notice servicing, enforcement, inspection, photographing, recording, communication, and related conduct caused or contributed to the injuries pleaded here

78.Section 3617 separately prohibits coercion, intimidation, threats, or interference with the exercise or enjoyment of Fair Housing Act rights. Regional Economic Community Action Program, *Inc. v. City of Middletown, 294 F.3d 35, 54–55 (2d Cir. 2002), addresses interference and retaliation* under § 3617, and Gilead Community Services, Inc. v. Town of Cromwell, 112 F.4th 93 (2d Cir. 2024), confirms the motivating-factor causation standard applicable to Fair Housing Act retaliation claims

79.Nicholas pleads a direct causal chronology: Defendants first received extensive medical, neurological, guardianship, OPWDD, and disability-related evidence; specific requests for *accommodation and protection followed; the relationship between Nicholas's disability and the* stability and privacy of his dwelling was expressly explained; written objections to inspection and

recording activity followed; and challenged servicing, enforcement, inspection, photographing, recording, communication, and Nicholas-specific conduct continued thereafter

## DISCOVERY PRESERVATION AND NON-LIMITATION

**80.** Nothing in this Complaint is intended to restrict, predetermine, exhaust, or otherwise limit the scope of discovery available to Nicholas under the Federal Rules of Civil Procedure or any order of this Court. References to particular documents, communications, witnesses, records, *servicing materials, property records, inspections, photographs, recordings, videos, vendors,* policies, practices, transactions, metadata, electronically stored information, or other categories of evidence are illustrative and nonexclusive.

**81.** Nicholas expressly preserves the right to seek any nonprivileged discovery relevant to a claim or defense and proportional to the needs of the case, including discovery concerning facts, *persons, entities, relationships, communications, records, electronically stored information, policies,* practices, agency, authorization, supervision, control, ratification, causation, damages, defenses, third-party vendors, work orders, photographs, video, metadata, recipients, retention practices, and other matters identified or developed through discovery.

**82.** Nicholas does not ask this Court to decide underlying state-law foreclosure issues as ultimate issues. Evidence concerning those subjects may nevertheless be relevant to the independent federal claims, including Defendants' knowledge, conduct, treatment of Nicholas, agency, causation, and damages. Seeking discovery concerning those matters does not mean that Nicholas agrees with or accepts Defendants' factual or legal positions.

**83.** Nothing in this Complaint waives Nicholas's right to seek leave to amend or assert an additional claim for which discovery or subsequently developed evidence supplies a good-faith factual and legal basis consistent with Federal Rule of Civil Procedure 11.

## COUNT I

**Fair Housing Act - Disability Discrimination and Failure to Reasonably Accommodate**
**42 U.S.C. §§ 3604(f)(3)(B), 3605; 24 C.F.R. §§ 100.204, 100.130(b)(3)**

**84.** Nicholas repeats and realleges paragraphs 1 through 83 as though fully set forth herein.

**85.** Section 805 of the Fair Housing Act, 42 U.S.C. § 3605, makes it unlawful for a person or entity whose business includes residential real-estate-related transactions to discriminate against any *person in making available, or in the terms or conditions of, such a transaction because of handicap.* Residential real-estate-related transactions include making or purchasing loans or providing other financial assistance secured by residential real estate.

**86. The Fair Housing Act separately defines discrimination because of handicap to include refusal to make reasonable accommodations in rules, policies, practices, or services when such *accommodations may be necessary to afford a person with a disability an equal opportunity to* use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). Olsen v. Stark Homes, Inc., 759 F.3d 140,**

**156 (2d Cir. 2014), and Austin v. Town of Farmington, 826 F.3d 622, 627–30 (2d Cir. 2016), address the governing reasonable-accommodation standards, including necessity, *reasonableness, refusal, and the relationship between the requested accommodation and* disability-related use and enjoyment. A separate showing of discriminatory animus is not required for a failure-to-accommodate claim**

**87.** HUD's implementing regulation expressly reaches mortgage servicing. 24 C.F.R. § 100.130(b)(3) identifies as unlawful the discriminatory servicing of loans concerning dwellings or *secured by residential real estate. Boykin v. KeyCorp, 521 F.3d 202, 214–16 (2d Cir. 2008),* addresses Fair Housing Act discrimination in residential mortgage lending, and Marquard v. New Penn Financial, LLC, No. 3:17-CV-549-SI, 2017 WL 4227685 (D. Or. Sept. 22, 2017), applies § 3605 and 24 C.F.R. § 100.130(b)(3) to mortgage servicing

**88.** Nicholas has a qualifying handicap within 42 U.S.C. § 3602(h). Defendants received actual, repeated, and detailed notice of his profound autism, nonverbal status, severe communication and functional limitations, court-appointed guardianship, inability independently to understand or protect his legal interests, OPWDD-related services, and disability-specific dependence upon the only home he has known.

**89.** Specific disability-related accommodations and protections were expressly requested. Those requests included special consideration to remain in the home, meaningful individualized treatment of Nicholas's disability circumstances, accommodation of his need for stability and continuity, cessation or modification of recurring inspection and recording practices after written objections, and protection against conduct undermining the privacy, security, predictability, and quiet use and enjoyment of his dwelling.

**90.** Despite actual and repeated notice, Nicholas alleges that Defendants did not provide the requested disability-related accommodation and protection and continued challenged administering, servicing, enforcement, inspection, photographing, recording, communication, and related practices *without modifying them to account for the disability-related necessity specifically documented and* presented to them.

**91.** The challenged post-notice conduct included maintaining Nicholas as a named person against whom property-affecting relief was pursued without identifying a personal loan obligation or clearly identifying the record interest Defendants contend belonged to him, and recurring property visits, inspections, photographing, filming, and recording after disability-specific notice and written requests for cessation or modification, including conduct apparently directed toward occupied windows, doorway areas, occupants, and areas visible toward or into the occupied residence.

**92.** *Nicholas alleges that the requested modifications were tied directly to disability-related* necessity because his treating physicians documented that consistency, structure, familiarity, routine, minimal environmental disruption, and stability are medically important to him, and that

change may cause significant deterioration. He further alleges that the repeated inspection and recording activity and the threat of displacement from the only residence he has known materially *burden the security, stability, privacy, use, and enjoyment of his disability-support environment.*

**93.** As a direct and proximate result of the alleged discriminatory servicing and failure to accommodate, Nicholas has suffered and continues to face injury to the security, stability, privacy, quiet use and enjoyment of his longstanding dwelling and disability-support environment, together with other compensable injury to be established through discovery and evidence.

**94.** Nicholas seeks all relief authorized by 42 U.S.C. § 3613 for the independent Fair Housing Act violations pleaded in this Count. Resolution of those federal claims does not require adjudication of any disputed mortgage, standing, note-possession, transfer, title, service, debt, lien, default, statutory-notice, or foreclosure issue as an ultimate issue or prerequisite to federal liability.

## COUNT II

**Fair Housing Act - Interference and Retaliation**
**42 U.S.C. § 3617; 24 C.F.R. § 100.400**

**95.** Nicholas repeats and realleges paragraphs 1 through 94 as though fully set forth herein.

**96. Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on *account of that person having exercised or enjoyed, a right protected by the Act. HUD's* implementing regulation, 24 C.F.R. § 100.400, likewise prohibits coercion, intimidation, threats, interference, and retaliation. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54–55 (2d Cir. 2002), addresses interference and retaliation under § 3617, and Gilead Community Services, Inc. v. Town of Cromwell, 112 F.4th 93 (2d Cir. *2024), confirms the motivating-factor causation standard applicable to Fair Housing Act* retaliation claims.**

**97.** Nicholas, acting through his court-appointed guardian because he cannot advocate for himself, repeatedly engaged in protected Fair Housing Act activity. His guardian disclosed his *disability, supplied medical, neurological, OPWDD, care-management and guardianship* documentation, requested reasonable accommodation and disability-related protection, invoked the Fair Housing Act in writing, objected to conduct affecting the security, privacy, predictability, stability, and quiet enjoyment of his dwelling, and requested modification or cessation of recurring property-inspection and recording activity.

**98.** Defendants had actual knowledge of that protected activity. The chronology is material: disability documentation and accommodation requests preceded later challenged conduct; federal Fair Housing Act protection was expressly invoked; written objections and requests for cessation or modification followed; and challenged conduct continued thereafter.

**99.** Following that protected activity, Nicholas alleges that Defendants continued conduct capable of interfering with the exercise and enjoyment of his Fair Housing Act rights, including

recurring property-inspection, photographing, filming, and recording activity after disability-specific written objections; continued treatment of Nicholas as a target of *property-affecting enforcement despite the absence of any identified personal loan obligation* attributable to him; and conduct by servicing or field representatives whose identity, authority, instructions, reporting obligations, and relationship to Defendants remain within Defendants' possession and control.

**100.** U.S. Bank's characterization of Nicholas's disability-related request as use of his disability as a "shield" from foreclosure, followed by the later "sound mind" / "not incompetents" representation despite the prior guardianship and incapacity evidence, is pleaded not to challenge a state-court ruling but as evidence relevant to knowledge, response to protected activity, treatment of Nicholas, and motive.

**101.** The *recurring inspection, photographing, filming, and recording activity is pleaded because* of its continuation, frequency, manner, scope, direction toward occupied windows or doorway areas, recording of occupants or areas visible toward or into the home, and continuation after Defendants received disability-specific notice and requests to cease or modify the conduct. Those post-notice circumstances are alleged to interfere with Nicholas's privacy, security, predictability, quiet and *peaceful use and enjoyment of the dwelling, and the medically significant stable environment* identified by his treating physicians.

**102.** Taken together, the repeated protected requests, Defendants' knowledge of those requests, the "shield" characterization, subsequent treatment of Nicholas's documented incapacity, the May 7 representation, property damage and disputed service circumstances, and the continuation of challenged housing-related conduct after written objection support the independent interference and retaliation theory pleaded in this Count.

**103.** This Count is pleaded cumulatively and, to the extent necessary, alternatively pursuant to Federal Rule of Civil Procedure 8(d), without election, abandonment, admission, or waiver of Count *I or any other legally available theory.*

**104.** To the extent third parties participated in inspections, photographing, recording, field-service, or related property activity, Nicholas seeks discovery concerning authorization, work orders, instructions, supervision, reporting, payment, transmission and retention of photographs or recordings, agency, actual or apparent authority, direction, control, ratification, and any other legally sufficient basis for attribution. The identities and chain of authority are matters particularly within Defendants' possession or control. See Meyer v. Holley, 537 U.S. 280, 285-91 (2003).

**105.** As a direct and proximate result of the alleged interference and retaliation, Nicholas has suffered and continues to face injury to the security, stability, privacy, quiet use and enjoyment of *his longstanding dwelling and disability-support environment, together with other compensable* injury to be established through discovery and evidence. Nicholas seeks all relief authorized by 42 U.S.C. § 3613 for the independent federal violations pleaded in this Count.

## RECOGNITION OF EXISTING RULE 17(C)(1) REPRESENTATION AND REQUEST FOR LICENSED COUNSEL

**106.** Nicholas cannot independently understand or conduct litigation, communicate legal positions, investigate facts, respond to motions, conduct discovery, or try this action. His existing Article 17-A guardianship and professional disability evidence provide objective evidence of his incapacity. (Ex. A.)

**107.** Federal Rule of Civil Procedure 17(c)(1) recognizes that a duly appointed guardian or like fiduciary may sue or defend on behalf of an incompetent person. Antoinette Brancato submits this Complaint solely in her existing court-appointed capacity as Nicholas's Article 17-A Guardian of the Person.

**108.** Because Antoinette is not an attorney, she does not purport to act as Nicholas's licensed legal counsel. Berrios v. New York City Housing Authority, 564 F.3d 130, 133–35 (2d Cir. 2009), addresses the need to provide a reasonable opportunity to obtain licensed representation and, where appropriate, for the Court to consider appointment of counsel before an incompetent person's potentially substantial claims are adjudicated on the merits.

**109.** Under 42 U.S.C. § 3613(b)(1), the Court may appoint an attorney for a person alleging a discriminatory housing practice. Under 28 U.S.C. § 1915(e)(1), the Court may request an attorney to represent a person unable to afford counsel. Nicholas submits his financial information separately on Form AO 239 and requests permission to proceed without prepaying fees or costs under 42 U.S.C. § 3613(b)(2) and 28 U.S.C. § 1915

**110.** Nicholas therefore requests a reasonable opportunity for licensed counsel to appear and, if appropriate, appointment or request of licensed counsel under those provisions before substantive merits litigation requiring legal representation proceeds.

**111.** Nicholas respectfully requests recognition of Antoinette Brancato as his duly appointed Article 17-A Guardian of the Person for purposes of Rule 17(c)(1), with all authority, duties, powers, protections, and rights conferred by the existing guardianship order and applicable law fully preserved. Nicholas does not request appointment of a guardian ad litem under Rule 17(c)(2), replacement of his existing guardian, modification of the guardianship order, or adjudication, limitation, surrender, supersession, or termination of Antoinette Brancato's guardianship authority.

## PROSPECTIVE RELIEF AND EXPRESS PRESERVATION OF A FUTURE RULE 65 APPLICATION

**112.** Nicholas seeks prospective and affirmative relief authorized by 42 U.S.C. § 3613(c)(1) directed to Defendants' own alleged discriminatory or interfering conduct, including conduct *involving disability-related accommodation, servicing, enforcement, field-service practices,* inspections, photographing, filming, recording, privacy, communications, retaliation, and reasonable procedures concerning his occupied dwelling.

**113.** This Complaint does not, standing alone, ask to operate as a temporary restraining order or preliminary injunction. Nicholas expressly preserves the right, should circumstances establish *immediate or irreparable injury before final adjudication, to make a separate application for* temporary or preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 and 42 U.S.C. § 3613(c)(1), supported by the facts and evidence existing at the time of that application.

**114.** Any future application for temporary or preliminary injunctive relief will be made for the protection of Nicholas's independent federal rights and will not, by virtue of that application, *constitute a request to disturb, replace, modify, limit, surrender, supersede, or terminate Antoinette* Brancato's existing Article 17-A guardianship.

**115.** Nothing in this section waives or limits any other legal or equitable remedy otherwise available under the federal authorities already pleaded, nor does it ask this Court through this Complaint to review, reverse, vacate, or invalidate a state-court judgment as such.

## PRESERVATION OF EXISTING GUARDIANSHIP AND REQUEST FOR LICENSED COUNSEL ONLY

**116.** Antoinette Brancato is Nicholas Brancato's existing court-appointed Article 17-A Guardian of the Person. Nothing in this Complaint, including the request for prospective, temporary, *preliminary, permanent, or other relief, seeks appointment of a guardian ad litem, appointment of a* substitute or additional guardian, removal or replacement of Antoinette Brancato, or modification, limitation, surrender, supersession, or termination of the existing Article 17-A guardianship.

**117.** Plaintiff seeks recognition of Antoinette Brancato's existing representative status consistent with Federal Rule of Civil Procedure 17(c)(1). Plaintiff does not request appointment of a guardian *ad litem under Rule 17(c)(2).*

**118.** Antoinette Brancato is not a licensed attorney and does not seek to act as Nicholas's attorney in federal litigation. The representation relief requested is limited to obtaining licensed counsel for Nicholas through the authorities already pleaded, while Antoinette remains his existing court-appointed guardian.

**119.** No allegation, request for relief, or future motion should be construed as a request to compete with, displace, diminish, surrender, adjudicate, or otherwise interfere with Antoinette Brancato's existing guardianship. The guardianship is presented as existing representative authority and supporting evidence of Nicholas's incapacity, not as an issue Plaintiff asks this Court to reopen or alter.

## PRAYER FOR RELIEF

**WHEREFORE, Nicholas respectfully requests judgment against Defendants, to the extent authorized by federal law, as follows:**

**A. Declaratory Relief.** A declaration that Defendants' own acts, practices, omissions, servicing or enforcement conduct, failure to reasonably accommodate, interference, and/or retaliation violated Nicholas's federally protected housing rights under the Fair Housing Act, including 42

U.S.C. §§ 3604(f)(3)(B), 3605, and 3617, without adjudicating the validity of the mortgage debt, foreclosure judgment, title, standing, or any state-court ruling as such.

**B. Compensatory Damages.** Actual compensatory damages under 42 U.S.C. § 3613(c)(1), in an amount established by proof, for injuries legally caused by Defendants' own federal violations, including injury to Nicholas's security, stability, privacy, quiet use and enjoyment of his disability-dependent dwelling and other compensable injuries established through evidence.

**C. Punitive Damages.** Punitive damages under 42 U.S.C. § 3613(c)(1), to the extent authorized by law and supported by the evidence.

**D. Prospective Injunctive and Affirmative Relief.** Pursuant to 42 U.S.C. § 3613(c)(1), relief directed to Defendants' own conduct, practices, employees, servicers, agents, and authorized vendors, including, to the extent supported by the evidence and necessary to remedy or prevent recurrence of a federal violation:

**(1)** requiring Defendants to maintain and implement a meaningful procedure for receiving, documenting, considering, and responding to disability-related accommodation requests concerning Nicholas and his dwelling;

**(2)** requiring Defendants to recognize and appropriately account for Nicholas's documented profound incapacity, nonverbal status, Article 17-A guardianship, inability independently to protect his interests, and medically documented need for residential stability when engaging in conduct governed by the Fair Housing Act;

**(3)** requiring disability-related communications concerning Nicholas to be directed through his lawful representative and through licensed counsel upon counsel's appearance rather than requiring Nicholas personally to understand, investigate, communicate concerning, or respond to matters he is incapable of managing;

**(4)** prohibiting Defendants from retaliating, coercing, intimidating, or interfering with Nicholas or his guardian because Fair Housing Act rights, reasonable accommodation, disability-related protection, or objections to discriminatory practices have been asserted;

**(5)** requiring reasonable modification of Defendants' future servicing, inspection, photographing, filming, recording, vendor, field-service, enforcement, and communication practices where such modification is necessary to afford Nicholas equal use and enjoyment of his dwelling;

**(6)** prohibiting unnecessary or excessive photographing or recording of occupants, occupied windows, doorway areas, or views toward or into occupied portions of the dwelling by persons acting at Defendants' direction or authorization where a reasonable, less intrusive servicing practice is available;

**(7)** requiring reasonable procedures for identification, authorization, supervision, and accountability of field-service personnel or vendors sent to Nicholas's occupied dwelling;

**(8)** requiring preservation of records concerning Nicholas's disability-related requests, servicing decisions, property inspections, field-service assignments, photographs, video, metadata, vendor instructions, reports, communications, and other materials relevant to the federal claims;

**(9)** requiring Defendants, in their own future conduct concerning Nicholas, not to disregard or materially misstate documented guardianship or incapacity information known to them; and

**(10)** requiring such other reasonable disability-related accommodation or affirmative action as the evidence establishes is necessary to remedy or prevent recurrence of Defendants' discriminatory or interfering practices.

**E. Recognition of Existing Guardian and Request for Counsel.** An order recognizing Antoinette Brancato as Nicholas's duly appointed Article 17-A Guardian of the Person for purposes of Federal Rule of Civil Procedure 17(c)(1), with the existing guardianship fully preserved; allowing a reasonable opportunity for licensed counsel to appear; and, if appropriate, appointing or requesting licensed counsel under 42 U.S.C. § 3613(b)(1) and, where applicable, 28 U.S.C. § 1915(e)(1). No guardian ad litem is requested. Nothing in this pleading asks the Court to replace the existing guardian, modify the guardianship order, or adjudicate, limit, supersede, surrender, or waive Antoinette Brancato's guardianship authority.

**F.**.Fee Relief. An order granting Nicholas's application to commence and continue this action without prepayment of fees, costs, or security under 42 U.S.C. § 3613(b)(2) and 28 U.S.C. § 1915, based upon the separately submitted Form AO 239

**G. Attorney's Fees and Costs.** Reasonable attorney's fees and costs as authorized by 42 U.S.C. § 3613(c)(2) if Nicholas becomes a prevailing party.

**H. Other Appropriate Federal Relief.** Such additional damages, equitable relief, affirmative action, or other relief authorized by the Fair Housing Act and consistent with this Court's *jurisdiction as the Court determines just and appropriate.*

**I. Jurisdictional Clarification and Express Non-Waiver.** The federal claims seek relief for Defendants' own alleged violations of federal law and do not require this Court to exercise appellate jurisdiction over a state-court judgment as such. Nothing in this Complaint admits or concedes the validity, enforceability, amount, ownership, standing, possession, transfer, lien scope, title position, service, statutory-notice compliance, property description, default, foreclosure predicate, or foreclosure entitlement asserted by any Defendant, and nothing herein releases, abandons, elects against, or waives any claim, defense, objection, appellate issue, property or occupancy interest, legal theory, discovery right, or legal or equitable remedy.

**J. Future Rule 65 Application.** Preservation of Nicholas's ability, upon an appropriate factual and legal showing, to seek temporary or preliminary relief by separate motion under Federal Rule of Civil Procedure 65 and 42 U.S.C. § 3613(c)(1) before final judgment, without any requested modification of Antoinette Brancato's existing Article 17-A guardianship.

## JURY DEMAND

Nicholas respectfully demands a jury trial on all issues triable by jury.

**SIGNATURE / REPRESENTATIVE CAPACITY**

Dated: October 2, 2026

Respectfully submitted,

NICHOLAS BRANCATO, Plaintiff, by and through his Court-Appointed Article 17-A Guardian of the Person

**ANTOINETTE BRANCATO**
Court-Appointed Article 17-A Guardian of the Person for Nicholas Brancato
166 West Windsor Parkway
Oceanside, New York 11572
Telephone: (516) 425-7927
Email: antoinettebrancato@gmail.com

Submitted solely in her existing court-appointed capacity as Article 17-A Guardian of the Person. Antoinette Brancato is not admitted to practice law and does not purport to act as Nicholas *Brancato's licensed legal counsel.*

## EXHIBIT INDEX

These exhibits are submitted for the limited purposes stated in the Complaint. Their inclusion does not waive any claim, defense, objection, appellate issue, property or occupancy interest, guardianship protection, discovery right, or other legal or equitable right.

| Exhibit | Description |
|---|---|
| A | Article 17-A Guardianship Order and Supporting Disability / Medical Documentation, including the physician materials relied upon concerning Nicholas's need for stability, consistency, familiar routines, and minimal environmental disruption. |
| B | NYLAG Correspondence Concerning Requests for Legal Assistance and Representation for Nicholas Brancato. |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

NICHOLAS BRANCATO, by and through
ANTOINETTE BRANCATO, his Court-Appointed
Article 17-A Guardian of the Person,

Plaintiff,

-against-

U.S. BANK TRUST NATIONAL ASSOCIATION,
not in its individual capacity, but solely as Trustee
of the Truman 2021 SC9 Title Trust, and
CARRINGTON MORTGAGE SERVICES, LLC,

Defendants.

------------------------------------------------------------X

# EXHIBIT A

## Article 17-A Guardianship Order and Supporting Disability Documentation

FACE OF DOCUMENT CONTAINS A MULTICOLORED VOID PANTOGRAPH AND MICROPRINT BORDER. THE BACK OF THIS DOCUMENT HAS INVISIBLE FLUORESCENT FIBERS, ARTIFICIAL WATERMARK ON BACK, AND A CHEMICAL REACTIVE VOID FEATURE

C20 (Rev. 1/07)

# Surrogate's Court of the State of New York
## Nassau County

File#: 2020-4295

## Certificate of Appointment of Guardian

IT IS HEREBY CERTIFIED that Letters in the Matter of the Ward named below have been granted by this Court, and such Letters are unrevoked, are valid and are in full force as of this date:

Name of Ward: Nicholas John Brancato

Date of Birth:

Residence of Ward: Nassau County

Guardian To Whom Letters Were Issued: Antoinette Brancato, 166 West Windsor Parkway, Oceanside NY 11572

Letters Issued: LETTERS OF GUARDIANSHIP (PERSON ONLY) 17A

Letters Issued On: June 9, 2021

Pursuant to SCPA §1750-b, the guardians are authorized and empowered to make all health care decisions with respect to the medical and dental needs of the ward and to render consent to any medical procedures which are necessary to the health and welfare of the ward unless the Court directs otherwise.

State of New York Unified Court System

**Dated: June 02, 2026**
**Mineola, New York**

IN TESTIMONY WHEREOF, the seal of the Nassau County Surrogate's Court has been affixed.

WITNESS, Honorable David P. Sullivan, Judge of the Nassau County Surrogate's Court.

Debra Keller Leimbach

Debra Keller Leimbach, Chief Clerk
Nassau County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the Nassau County Surrogate's Court and expires 6 months from the issue date of this certificate, unless otherwise stated above.*

# Long Island Neurology Consultants

360 Merrick Road • 1st Floor • Lynbrook • New York 11563-2526

Lewis A. Levy, M.D.
Mark A. Nelson, D.O.
Eric J. Hanauer, M.D.
Stephen J. Roth, M.D.
Kristin M. Waldron, M.D.
*Diplomates in Neurology*

November 4, 2025

Patient Name: Brancato, Nicholas
Account #: [redacted]
Date of Birth: [redacted]

To Whom It May Concern:

**TOPIC:** Nicholas needs stability in his life.

**DISCUSSION:** As a board certified neurologist, I treat Nicholas Brancato for autism. Within the specific program, he is doing well at the current time. Because of the autism, Nicholas requires consistency, structure, and less change in his environment. He would have significant difficulty adjusting the changes in his routine or changes in his environment. He might exhibit disruptive behavior including physical aggression or even an emotional catastrophe. For him to do well, he needs a familiar routine, a reliable situation, and places and people with whom he is familiar. *Any change might cause significant deterioration in Nicholas' condition.*

If you have any additional questions, please do not hesitate to contact this office.

L Levy

Sincerely,
Lewis A. Levy, M.D.
Diplomate in Neurology

THIS DOCUMENT IS DIGITALLY SIGNED BY THE PHYSICIAN

Northwell Health
Physician Partners

Name: NICHOLAS BRANCATO
Address: 166 W WINDSOR PKWY
OCEANSIDE, NY 11572

Date of Visit: Apr 16 2024
MRN: [redacted]
DOB: [redacted]

April 16, 2024

To Whom it May Concern:

Nicholas Brancato is presently being followed by the Division of Pediatric Neurology at Cohen Children's Medical Center for a diagnosis of: Autism, Chronic Motor Tic

*Nicholas in a 21 year old young man diagnosed with Autism. He is in a school program in his community that he is doing well in.* Due to Nicholas' Autism, he does well with consistency, structure and less change is better. Individuals with Autism have difficulty adjusting to *changes in their routine and may even display disruptive behaviors, including physical aggression or emotional melt downs.* In order to learn and develop positively, children with autism require familiar routines, situations, places, and people. As true as this is for every child, it is critically true for kids with special needs, very much including autism.

Nicholas had an abnormal EEG, which showed generalized polyspike and wave and right occipital spikes. He experiences frequent eye blinking which are motor tics. Additionally, his MRI of the brain showed a small pineal cyst.

Any consideration you can provide to this family, with the least amount of disruption to Nicholas, or to allow him to remain in the same *home, community and school district would be very much appreciated.*

If you have any further questions, please contact our office at (516) - 465 - 5255.

Sincerely,

Rose Marrie Sy-Kho, M.D.
Cohen Children's Northwell Health
Pediatric Neurology
2001 Marcus Ave, Suite W290 & W260
Lake Success, NY 11042
TEL: (516) - 465 - 5255
FAX: (516) - 326 - 4510

Electronically signed by : ROSE MARRIE SYKHO, MD; Apr 16 2024 12:19PM Eastern Standard Time (Author)

ACA/NY
ADVANCE CARE ALLIANCE

Advance Care Alliance New York
300 Motor Parkway, Suite 105
Hauppauge, NY 11788

833-692-2269
acany.org

November 3, 2025
Re: Nicholas Brancato Tabs# [redacted]

Ms. Brancato,

According to our records Nicholas Brancato became eligible for OPWDD services effective 05/06/2010 and he currently remains eligible. Please be informed that Nicholas Brancato TABS [redacted] is approved for the services listed below:

ACA Health Home Care Management
Day Habilitation Without Walls- Provider: ACDS, INC
Self Directed Services: Provider- Independent Support Services
Community Habilitation: Provider- Independent Support Services

Nicholas has an active Life Plan and receives support from his team.

If further information is needed to help support Nicholas, please feel free to contact me at 914-627-9408.

Sincerely,

Annmarie Guzzardi, Regional Director for Advance Care Alliance

OPWDD

NYS Office For People With Developmental Disabilities

Andrew M. Cuomo, Governor
Kerry A. Delaney, Acting Commissioner

HCBS Auth.NOD.01

***NEW YORK STATE DEPARTMENT OF HEALTH***
**OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES**

***NOTICE OF DECISION***

**AUTHORIZATION FOR PARTICIPATION in the OPWDD MEDICAID HOME AND COMMUNITY BASED SERVICES (HCBS) WAIVER PROGRAM**

Date of Notice: 12/04/2014

BRANCATO, N[redacted]
Applicant's Name

F H [redacted]
Applicant's Medicaid CIN

[redacted]
TABS ID #

166 W. WINDSOR PARKWAY
OCEANSIDE, NY 11572

Address, City, State, Zip Code

Dear BRANCATO, N[redacted]

Your application for participation in the OPWDD Home and Community Based Services (HCBS) waiver program has been APPROVED effective. 11/17/2014

☐ If you also applied for Medicaid while applying for the HCBS waiver program, you have already or will be receiving a notice regarding Medicaid eligibility under separate cover. This notice will be sent by the local social service district where you applied.

☒ You already have Medicaid coverage, and HCBS waiver enrollment will not change your Medicaid Eligibility.

**YOU HAVE THE RIGHT TO APPEAL THIS DECISION**

If you think this decision is wrong, you can ask for a conference (meeting) with the Region 5 Developmental Disabilities Regional Office, ask for a state fair hearing with a state hearing officer from the New York State Office of Temporary and Disability Assistance (NYS OTDA), or ask for both. Please read the rest o this notice to find out how to request a conference and/or a fair hearing.

**YOU HAVE 60 DAYS FROM THE DATE OF THIS NOTICE TO REQUEST A FAIR HEARING**

**RIGHT TO A CONFERENCE:** If you think this decision was wrong or if you do not understand this decision, you may ask for a conference. Sometimes this is the fastest way to solve any problems you may have. You are encouraged to do this even if you have asked for a fair hearing. If you want a conference, you should ask for one as soon as possible.

To request a conference, please call: Lois Kilkenny, *Individualized Services Director 631-416-3912*
This number is used *only for asking for a conference. It is not the way you request a fair hearing.*

If you ask for conference you are still entitled to a fair hearing. Read below for fair hearing information.

**RIGHT TO A FAIR HEARING:** If you believe that the above action is wrong, you may request a State fair hearing by:

1) **Telephone:** You may call the state wide toll free number: 800-342-3334 (PLEASE HAVE THIS NOTICE WITH YOU WHEN YOU CALL); OR
2) **Fax:** Send a copy of this notice to fax number (518) 473-6735; OR
3) **On-Line:** Complete and send the online request form at: http://www.otda.ny.gov/oah/forms.asp; OR
4) **Write:** Send a copy of all pages of this completed notice, to the Fair Hearing Section, New York State Office of Temporary and Disability Assistance, P.O. Box 1930, Albany, New York 12201-1930. Please keep a copy for yourself.
5) *New York City participants ONLY:* You may also walk-in to the Office of Administrative Hearings, of the Office of Temporary & Disability Assistance, 14 Boerum Place, Brooklyn, NY. Bring a copy of this notice with you.

☐ I want a fair hearing.

Print Name of Individual Seeking Services: ______________________

Address: ______________________

Telephone: ______________________

Signature of Individual: ______________________ Date: __________

If you request a fair hearing, the State will send you a notice which tells you when and where the fair hearing will be held. At the hearing, you will have the chance to explain why you think the decision is wrong. You can bring your lawyer, a relative, a friend or someone else to help you do this. If you cannot come yourself, you can send someone to represent you. If you are sending someone who is not a lawyer to the hearing instead of attending the hearing yourself, you must give that person a letter to show the hearing officer that you want the person to represent you at the hearing.

At the hearing you, your lawyer or other representative will have the opportunity to explain why the decision is wrong and to give the hearing officer written papers to explain why the decision is wrong. You should bring any witnesses who can help you. You should also bring any papers you have that you think may help you. At the hearing, you, your lawyer or other representative will have a chance to ask questions of any persons who appear at the hearing.

**LEGAL ASSISTANCE:** If you need free legal assistance, you may be able to obtain such assistance by contacting your local Legal Aid Society or other legal advocate group. You may locate the nearest Legal Aid Society or advocate group by checking your Yellow Pages under "Lawyers".

**ACCESS TO YOUR FILE AND COPIES OF DOCUMENTS:** To help you get ready for the hearing, you have a right to look at your case file. If you call or write to us, we will provide you with free copies of the documents from your file which we will give to the hearing officer at the fair hearing. Also, if you call or write to us, we will provide you with free copies of other documents from your file which you think you may need to prepare for your fair hearing.

If you want copies of documents from your case file, you should ask for them ahead of time. They will be provided to you within a reasonable time before the date of the hearing. Documents will be mailed to you only if you specifically ask that they be mailed.

To ask for documents or to find out how to look at your file, please contact:
Lois Kilkenny, Individualized Services Director 631-416-3912

**INFORMATION:** If you want more information about your case, how to ask for a fair hearing, how to see your file, or how to get additional copies of documents, please contact:
Lois Kilkenny, Individualized Services Director 631-416-3912

Sincerely,

Jacquelyn L. Best
Director
Region 5, Developmental Disabilities Regional Office
New York State Office For People With Developmental Disabilities

c: Advocate/Parent
Service Coordinator
DDRO Waiver Tabs Data Entry
Local Social Services District Office (district with fiscal responsibility)
LDSS Office in County of Residence (if different from district above)
Revenue Support Field Office (RSFO)
DDRO HCBS Waiver Coordinator
County:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

NICHOLAS BRANCATO, by and through
ANTOINETTE BRANCATO, his Court-Appointed
Article 17-A Guardian of the Person,

Plaintiff,

-against-

U.S. BANK TRUST NATIONAL ASSOCIATION,
not in its individual capacity, but solely as Trustee
of the Truman 2021 SC9 Title Trust, and
CARRINGTON MORTGAGE SERVICES, LLC,

Defendants.

---------------------------------------------------------------X

# EXHIBIT B

## NYLAG Correspondence Concerning Requests for Legal Assistance and Representation

When we spoke yesterday you said at that point there was nothing to answer to that if something new happened that when you could help with paperwork
Something has happened since our last conversation and my son needs help with filing papers
Respectfully
Antoinette
Brancato
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 2:07 PM
To: Noelle Eberts <NEberts@nylag.org>

can someone help my son reply to the motion for summary judgment and sale
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 2:09 PM
To: Noelle Eberts <NEberts@nylag.org>, Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

can someone help my son reply to the motion for summary judgment and sale

[Quoted text hidden]

---

**Noelle Eberts** <NEberts@nylag.org> Fri, May 8, 2026 at 2:13 PM
To: antoinette brancato <antoinettebrancato@gmail.com>, Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

Hi Ms. Brancato,

As we discussed, you will need to attend our clinic on Monday if you have received legal documents and would like to discuss your case more.

If your son is unable to speak with us, we will not be able to assist him. You will need to consult a disability attorney if you have additional concerns about his rights.

Please note I will not be able to respond to any additional emails.

**Noelle F. Eberts**
Supervising Attorney | Consumer Protection Unit
100 Pearl Street, 19th Floor | New York, NY 10004
t: 212.613.7356 | f: 212.714.6644
Facebook | Instagram | Twitter | LinkedIn
**nylag.org**

NYLAG
New York Legal Assistance Group

---

**From:** antoinette brancato <antoinettebrancato@gmail.com>
**Sent:** Friday, May 8, 2026 2:09 PM
**To:** Noelle Eberts <NEberts@nylag.org>; Sarah Bancone <sbancone@nylag.org>; Rose Marie Cantanno <RMCantanno@nylag.org>
**Subject:** Fwd: Call Tomorrow?

[Quoted text hidden]

In order for your son to receive assistance at the clinic we must be able to speak with him directly and make sure he understands what is going on. From our conversation, I am concerned this is not feasible, so your son will most likely need a power of attorney or guardian- these are discussions to have with a disability attorney. That said, even if you can vacate the foreclosure judgment against your son, it will not stop the *home from being foreclosed. I am sorry I do not have better information for you.*

All the best,

**Noelle F. Eberts**
Supervising Attorney | Consumer Protection Unit
*100 Pearl Street, 19th Floor | New York, NY 10004*
t: 212.613.7356 | f: 212.714.6644
Facebook | Instagram | Twitter | LinkedIn
**nylag.org**

**NYLAG**
New York Legal Assistance Group

---

**From:** antoinette brancato <antoinettebrancato@gmail.com>
**Sent:** Thursday, May 7, 2026 5:32 PM
**To:** Noelle Eberts <NEberts@nylag.org>
**Cc:** Sarah Bancone <sbancone@nylag.org>; Rose Marie Cantanno <RMCantanno@nylag.org>
**Subject:** Re: Call Tomorrow?

[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 10:40 AM
*To: Noelle Eberts <NEberts@nylag.org>*
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

Can I come for him since I am his guardian
Can you file papers on his behalf.
I'll file my own papers To the motion that was just posted on NYSCEF after our conversation yesterday
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 10:41 AM
To: Noelle Eberts <NEberts@nylag.org>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

I'm not sure if Sara showed you my sons disability documents as well as the surrogates court order?
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 10:50 AM
To: Noelle Eberts <NEberts@nylag.org>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

He is in a day hab program
*[Quoted text hidden]*

---

**antoinette brancato** <antoinettebrancato@gmail.com> Fri, May 8, 2026 at 11:04 AM
To: Noelle Eberts <NEberts@nylag.org>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

[redacted]

I am seeking assistance to ensure that my son's rights are fully protected in light of his disability, including whether additional safeguards such as appointment of a guardian ad litem or other protections are required.

Please let me know if any additional information is needed.

Thank you for your time and consideration.

Sincerely,
Antoinette Brancato
Pro Se Defendant / Surrogate-Appointed Representative

***This email, including any attachments, may contain information that is legally privileged and/or confidential. If you are not the person this email was intended to reach, then do not share, distribute, or copy it. Please notify the person who sent this email immediately and then delete the email, including any attachments.***

***This email, including any attachments, may contain information that is legally privileged and/or confidential. If you are not the person this email was intended to reach, then do not share, distribute, or copy it. Please notify the person who sent this email immediately and then delete the email, including any attachments.***

***This email, including any attachments, may contain information that is legally privileged and/or confidential. If you are not the person this email was intended to reach, then do not share, distribute, or copy it. Please notify the person who sent this email immediately and then delete the email, including any attachments.***

***This email, including any attachments, may contain information that is legally privileged and/or confidential. If you are not the person this email was intended to reach, then do not share, distribute, or copy it. Please notify the person who sent this email immediately and then delete the email, including any attachments.***

---

**antoinette brancato** <antoinettebrancato@gmail.com> Wed, May 6, 2026 at 2:47 PM
To: Noelle Eberts <NEberts@nylag.org>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

Thank you very much. Yes, please do: Call me tomorrow at 3 PM. That would be perfect.
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Thu, May 7, 2026 at 1:13 PM
To: Noelle Eberts <NEberts@nylag.org>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

Good afternoon just confirming our call this afternoon
[Quoted text hidden]

---

**antoinette brancato** <antoinettebrancato@gmail.com> Thu, May 7, 2026 at 5:32 PM
To: Noelle Eberts <NEberts@nylag.org>
*Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>*

I just opened my email after we have spoke and there is a notice of motion by the plaintiff for judgment and sale. Can you help my son now? Can you help him answer that notice?
[Quoted text hidden]

---

**Noelle Eberts** <NEberts@nylag.org> Fri, May 8, 2026 at 10:36 AM
To: antoinette brancato <antoinettebrancato@gmail.com>
Cc: Sarah Bancone <sbancone@nylag.org>, Rose Marie Cantanno <RMCantanno@nylag.org>

As we discussed, if you bring your documents to our clinic at the Nassau Supreme Courthouse 11-2pm, basement, we can review and provide you with pro se assistance. To be clear, we will not be able to formally represent you but we can help you represent yourself.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 02 2026 ★
LONG ISLAND OFFICE

Revised 02.13.2025; Effective 02.17.2025

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

NICHOLAS BRANCATO, by and through ANTOINETTE BRANCATO, Court-Appointed Article 17-A Guardian of the Person

**(b)** County of Residence of First Listed Plaintiff: Nassau County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Antoinette Brancato, Court-Appointed Article 17-A Guardian (non-attorney; Rule 17(c) counsel requested)
166 West Windsor Parkway, Oceanside, NY 11572 | (516) 425-7927

## DEFENDANTS

U.S. BANK TRUST NATIONAL ASSOCIATION, solely as Trustee of the Truman 2021 SC9 Title Trust; CARRINGTON MORTGAGE SERVICES, LLC

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Unknown - no federal appearance known at filing

RECEIVED
OCT 02 2026
EDNY PRO SE OFFICE

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☒ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 3604 (F)(3)(B) 3605, 3617 and 3613

Brief description of cause:
Fair Housing Act disability discrimination/ Fair Housing Act Discrimination/ Failure to reasonably Accommodate / Interference & Retaliation [illegible] Res Mortgage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ To be proven

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE None known in EDNY DOCKET NUMBER N/A

DATE ______ SIGNATURE OF ATTORNEY OF RECORD ______

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

REC'D IN PRO SE OFFICE
OCT 2 '26 PM3:39

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, ______________________, counsel for ______________________, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- ☐ monetary damages sought are in excess of $150,000.00 exclusive of interest and costs,
- ☑ the complaint seeks injunctive relief, or
- ☐ the matter is otherwise ineligible for the following reason:

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks. Add an additional page if needed.

N/A - Plaintiff is an individual; no corporate disclosure by Plaintiff.

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 3 in Section VIII on the front of this form. Rule 3(a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 3(a) provides that "A civil case shall not be deemed "related" to another civil case merely because the civil case involves identical legal issues, or the same parties." Rule 3 further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (b), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NEW YORK EASTERN DISTRICT DIVISION OF BUSINESS RULE 1(d)(3)

*If you answer "Yes" to any of the questions below, this case will be designated as a Central Islip case and you must select Office Code 2.*

1. Is the action being removed from a state court that is located in Nassau or Suffolk County? ☐ Yes ☑ No
2. Is the action—not involving real property—being brought against United States, its officers or its employees AND the majority of the plaintiffs reside in Nassau or Suffolk County? ☐ Yes ☑ No
3. If you answered "No" to all parts of Questions 1 and 2:
   a. Did a substantial part of the events or omissions giving rise to claim or claims occur in Nassau or Suffolk County? ☑ Yes ☐ No
   b. Do the majority of defendants reside in Nassau or Suffolk County? ☐ Yes ☑ No
   c. Is a substantial amount of any property at issue located in Nassau or Suffolk County? ☑ Yes ☐ No
4. If this is a Fair Debt Collection Practice Act case, was the offending communication received in either Nassau or Suffolk County? ☐ Yes ☑ No

(*Note, a natural person is considered to reside in the county in which that person is domiciled; an entity is considered a resident of the county that is either its principal place of business or headquarters, or if there is no such county in the Eastern District, the county within the District with which it has the most significant contacts*).

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
☐ Yes ☑ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
☐ Yes (If yes, please explain) ☑ No

I certify the accuracy of all information provided above.

Signature: [signature]